## UNITED STATES COURT OF INTERNATIONAL TRADE

|  |  |
|---|---|
| JIANLONG BIOTECHNOLOGY CO., LTD.,  )<br>  )<br>                    Plaintiff,  )<br>         v.  )<br>  )<br>UNITED STATES,  )<br>  )<br>                    Defendant.  )<br>  ) | Court No. 22-00074 |

## **COMPLAINT**

Pursuant to Rule 3(a)(2) of the Rules of the United States Court of International Trade, Plaintiff, Jianlong Biotechnology Co., Ltd., ("Plaintiff"), by and through its counsel, alleges and states, as follows:

## **JURISDICTION**

1. Plaintiff brings this action pursuant to, and in accordance with, sections 516A(a)(2)(A)(i)(I) and 516A(a)(2)(B)(iii) of the Tariff Act of 1930, as amended (codified at 19 U.S.C. §§ 1516a(a)(2)(A)(i)(I) and (a)(2)(B)(iii)), contesting certain aspects of the final results of the 2019-2020 administrative review of the antidumping duty order on *Xanthan Gum From the People's Republic of China* (Case No. A-570-985), issued by the U.S. Department of Commerce ("Commerce"), International Trade Administration, as they apply to Plaintiff. *See Xanthan Gum From the People's Republic of China: Final Results of Antidumping Duty Administrative Review and Final Determination of No Shipments; 2019-2020*, 87 Fed. Reg. 7104 (February 8, 2022) ("*Final Results*"), and accompanying Issues and Decision Memorandum (January 31, 2022).

2. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1581(c) and 19 U.S.C. § 1516a(a)(2).

**Court No. 22-00074**                                                                                                           **Complaint**

## STANDING

3.       Plaintiff is a foreign producer and exporter in the People's Republic of China of subject merchandise, xanthan gum from the People's Republic of China, and therefore is an interested party within the meaning of 19 U.S.C. § 1677(9)(A). Plaintiff participated in the proceedings that constituted the administrative review that is the subject of this action, and accordingly has standing to commence this action pursuant to 19 U.S.C. § 1516a(d) and 28 U.S.C. § 2631(c).

## TIMELINESS

4.       The *Final Results*, which are being challenged herein, were published in the *Federal Register* on February 8, 2022. *See* 87 Fed. Reg. 7104. On March 10, 2022, Plaintiff timely filed a Summons initiating this action within thirty days of the publication of the *Final Results*, and Plaintiff is timely filing the Complaint today within thirty days of the filing of the Summons. The filing of the Summons and Complaint thus are timely in accordance with 19 U.S.C. § 1516a(a)(2)(A), 28 U.S.C. § 2636(c), and Rules 3(a)(2) and 6(a) of the Rules of the U.S. Court of International Trade.

## STANDARD OF REVIEW

5.       This Court reviews actions concerning determinations issued by Commerce brought under 19 U.S.C. § 1516a(a)(2) to determine whether they are "unsupported by substantial evidence on the record, or otherwise not in accordance with law." 19 U.S.C. § 1516a(b)(1)(B)(i).

## PROCEDURAL HISTORY

6.       In July 2013, Commerce published in the *Federal Register* an antidumping duty ("AD") order on xanthan gum from China. *See Xanthan Gum from the People's Republic of*

**Court No. 22-00074**                                                                                                             **Complaint**

*China: Amended Final Determination of Sale at Less Than Fair Value and Antidumping Duty Order,* 78 Fed. Reg. 43143 (Dep't of Commerce July 19, 2013) *("Order").* Subsequently, on July 1, 2020, Commerce published in the *Federal Register* a notice of opportunity to request an administrative review of the AD order on xanthan gum from China for the period July 1, 2019, through June 30, 2020. *See Antidumping or Countervailing Duty Order, Finding, or Suspended Investigation; Opportunity to Request Administrative Review*, 85 Fed. Reg. 39531 (Dep't of Commerce July 1, 2020).

7. Pursuant to section 751(a)(1) of the Tariff Act of 1930, as amended (the Act), and 19 CFR 351.213(b)(1), in July 2020, Commerce received requests to conduct administrative reviews of the AD order on xanthan gum from China for numerous companies, including, among others, Deosen Biochemical (Ordos) Ltd./ Deosen USA Inc. (collectively "Deosen"); Meihua Group International Trading (Hong Kong)/ Xinjiang Meihua Amino Acid Co., Ltd. (collectively "Meihua"); CP Kelco (Shandong) Biological Co., Ltd.; and Neimenggu Fufeng Biotechnologies Co., Ltd. and its affiliates, Shandong Fufeng Fermentation Co., Ltd. (Shandong Fufeng) and Xinjiang Fufeng Biotechnologies Co., Ltd. (Xinjiang Fufeng) (collectively "Fufeng"), as well as for Plaintiff. On September 3, 2020, in accordance with 19 CFR 351.221(c)(1)(i), Commerce published a notice of initiation of administrative review for multiple companies, including Plaintiff. *See Initiation of Antidumping and Countervailing Duty Administrative Reviews*, 85 Fed. Reg. 54983 (Dep't of Commerce September 3, 2020). Commerce's period of review was July 1, 2019, through June 30, 2020.

8. On October 2, 2020, Jianlong submitted a separate rate application to Commerce.

9. Also, in October 2020, after considering the large number of potential producers/exporters involved in the administrative review, Commerce determined that it was not

**Court No. 22-00074**                                                                                                                   **Complaint**

practicable to examine all exporters/producers of subject merchandise for which a review was requested. As a result, pursuant to section 777A(c)(2)(B) of the Act, Commerce determined that it could reasonably individually examine only the two largest producers/exporters accounting for the largest volume of xanthan gum from China by volume during the POR. *See Selection of Respondents for the 2019-2020 Administrative Review of the Antidumping Duty Order on Xanthan Gum from the Republic of China,* 86 FR 42781 (Dep't of Commerce October 26, 2020). Accordingly, Commerce issued the AD questionnaire to "Meihua" (comprised of Meihua Group International Trading (Hong Kong) Ltd./ Langfang Meihua Biotechnology Co., Ltd./ Xinjiang Meihua Amino Acid Co., Ltd.), and "Fufeng" (comprised of Neimenggu Fufeng Biotechnologies Co., Ltd./ Shandong Fufeng Fermentation Co., Ltd./ Xinjiang Fufeng Biotechnologies Co., Ltd.).

10. In December 2020, Deosen Biochemical (Ordos) Ltd., and CP Kelco (Shandong) withdrew their requests for administrative review. *See Xanthan Gum From the People's Republic of China: Preliminary Results of Antidumping Duty Administrative Review, Partial Rescission of the Antidumping Duty Administrative Review, and Preliminary Determination of No Shipments; 2019-2020*, 86 Fed. Reg. 42781 (August 05, 2021) ("*Preliminary Results*"). While Commerce rescinded its review of CP Kelco (Shandong) Biological Co., Ltd., Commerce continued its administrative review of Deosen because the petitioner did not withdraw its request for Deosen. *Id.*

11. On June 8, 2021, Jianlong submitted a response to a separate rate application supplemental questionnaire issued by Commerce.

12. On August 5, 2021, Commerce issued its preliminary results of the 2019-2020 administrative review. *See Xanthan Gum From the People's Republic of China: Preliminary Results of Antidumping Duty Administrative Review, Partial Rescission of the Antidumping Duty*

*Administrative Review, and Preliminary Determination of No Shipments; 2019-2020*, 86 Fed. Reg. 42781 (August 5, 2021) ("*Preliminary Results*"). In the *Preliminary Results*, Commerce determined that the information placed on the record by Jianlong demonstrated that Jianlong was entitled to separate rate status, and Commerce assigned to Jianlong a dumping margin of 77.04%, which was equal to the simple average of the dumping margins of mandatory respondents, Fufeng (0.00) and Meihua (154.07). Commerce relied on facts otherwise available with adverse inferences to determine the dumping margin for Meihua because Commerce concluded that Meihua provided Commerce with inaccurate data pertaining to certain adjustments needed to calculate accurate net U.S. prices. *Id.*

13. On February 8, 2022, Commerce issued its *Final Results* of review in which it affirmed its preliminary decision and continued to assign Jianlong a dumping margin of 77.04%. Commerce published its *Final Results* in the *Federal Register* at 87 Fed. Reg. 7104 (Feb. 8, 2022). Commerce set forth the legal bases for its *Final Results* in an Issues and Decision Memorandum, dated January 31, 2022.

## ISSUES PRESENTED BY THE ACTION AND PLAINTIFF'S STATEMENT OF CLAIMS

14. In the following respects, and for other reasons apparent from the record of the administrative proceeding, Commerce's *Final Results* of the 2019-2020 antidumping duty administrative review were unsupported by substantial record evidence and/or were otherwise not in accordance with law.

## COUNT ONE

15. Paragraphs 1 through 14 are incorporated herein by reference.

16. Commerce's methodology for calculating the separate rate for eligible non-mandatory respondents was unreasonable because Jianlong's antidumping duty margin in the seventh administrative review did not "reasonably reflect" Jianlong's "economic reality."

17. Section 735(c)(5)(B) of the Act allows Commerce to use any *reasonable* method to calculate the separate rate.

18. The CAFC has held that respondents' adverse-facts-available rates do not "reasonably reflect" the dumping margin of non-examined respondents. *Yangzhou Bestpak Gifts & Crafts Co. v. United States,* 716 F.3d, 1370, 1378 (Fed. Cir. 2013). In such circumstances, the rate assigned to the non-examined respondents must reflect the economic realities of the non-examined respondents. In *Bestpak*, the rate assigned to one of the examined respondents was based on adverse facts available, and not on its actual commercial practices, and thus, the rate calculated using the examined respondent's adverse-facts-available ("AFA") rate was not reflective of the economic reality of the non-examined company. *Id.*

19. Here, nothing in the administrative record ties the 77.04% antidumping margin assigned to Jianlong to Jianlong's commercial activity. For Meihua's antidumping duty margin, Commerce relied on facts otherwise available with adverse inferences leading to an antidumping duty margin for Jianlong that does not "reasonably reflect" Jianlong's "economic reality," which is demonstrated by Jianlong's sales transactions.

20. Given the history of this proceeding (i.e., several mandatory respondents receiving margins less than 10 percent, including *de minimis* margins over the years, and Jianlong itself receiving a 9.3% margin when it was individually examined in the third administrative review), the AFA-based separate rate assigned to Jianlong was not reasonable and not supported by substantial evidence.

Court No. 22-00074                                                                                          Complaint

## COUNT TWO

21.  Paragraphs 1 through 14 are incorporated herein by reference.

22.  Commerce should not have based the dumping margin for Meihua on total AFA because Meihua correctly reported to Commerce the duties *paid* to CBP and the entered values listed on CBP 7501 Entry Summaries (the only fixed values at the time of the submission of the Section C Questionnaire Response) as requested in the AD Questionnaire.

23.  The application of facts otherwise available and adverse inferences is governed by 19 U.S.C. § 1677e(a) and (b). Specifically, 19 U.S.C. § 1677e(a) authorizes the use of facts otherwise available if necessary information is not on the record, or if an interested party or any other person withholds requested information, fails to provide requested information by the requested deadline or in the requested form and manner, significantly impedes a proceeding, or provides information that cannot be verified. Further, 19 U.S.C. § 1677e(b) authorizes the use of adverse inferences if the administrating authority "finds that an interested party has failed to cooperate by not acting to the best of its ability to comply with a request for information from the administering authority…"

24.  Meihua accurately reported to Commerce the duty amounts that were *paid* – as requested in Commerce's questionnaire. The duties that Meihua paid and the entered values reported on the CBP 7501 Entry Summaries and the non-final values were on the administrative record, and were reported by the appropriate deadline.

25.  Meihua did not deviate from Commerce's longstanding and consistent practice of requiring respondents to report entered values and duty amounts at the time of entry reflected on CF-7501 Customs entry documents.

**Court No. 22-00074**                                                                                               **Complaint**

26. Because there was no gap in the record because Meihua fully cooperated in this review by providing necessary information and not withholding any information, because Commerce did not identify any information that was not provided upon request by Meihua, and because Meihua acted to the best of its ability to comply with all information requests from Commerce, Commerce's application of AFA to Meihua was unsupported by substantial evidence and contrary to law.

## DEMAND FOR JUDGMENT AND PRAYER FOR RELIEF

27. For the reasons stated above, Plaintiff respectfully requests that the Court:

    (a)   enter judgment in Plaintiff's favor;

    (b)   declare that with respect to the issues raised in this Complaint, Commerce's determinations and all related findings and conclusions are unsupported by substantial evidence on the record or are otherwise not in accordance with law;

    (c)   remand these matters to Commerce for redetermination consistent with the Court's opinion, including a recalculation of Plaintiff's antidumping duty margins; and

    (d)   provide such other relief as the Court deems just and proper.

                                                    Respectfully submitted,

                                                    /s/ Robert G. Gosselink
                                                    Robert G. Gosselink
                                                    Jonathan M. Freed

                                                    TRADE PACIFIC PLLC
                                                    700 Pennsylvania Avenue, SE, Suite 500
                                                    Washington, DC  20003
                                                    Tel:  (202) 223-3760
                                                    Email:  rgosselink@tradepacificlaw.com
Dated:  April 06, 2022                              *Counsel to Plaintiff*